We'll move to argument in our second case, which is United States v. Bejar-Guizar. That's case number 23-3201. Ms. Lopez? Good morning, Sandra Lopez of the Federal Defenders. On behalf of Mr. Bejar-Guizar, I'll be... Thank you. I botched the name and I apologize. It's hard for me too. I'll be attempting to reserve two minutes of my time for you, but I'll be checking the clock. Prior to the arrest of Mr. Bejar, Border Patrol observed him walking down a street towards a mall with mud on his boots and clothes in a densely populated residential and commercial area on the side of the street where agents had seen homeless people. With little more than these core facts, one, the agents did not have reasonable suspicion to stop him. It's more than just where they had seen homeless people. I mean, that may be true. I don't know. But this was a common area, wasn't it, where border crossings occurred? Actually, Your Honor, in general, the border is a common area where there are undocumented people. But if we look at this particular area, it was an area that was densely populated with homes and businesses. The mall was just 200 miles away. So although there is proximity... Probably less than 200 miles. I mean, 200 yards. I apologize. 200 yards away. So it was a good walk. 200 yards away. The border was farther than that. So this is unlike other proximity to the border cases where the person is found in a very remote rural area. In combined... So all of the... Yes, it was the proximity to the border, but there was no testimony from the agents that they had arrested someone specifically on the south side of the street. There was no testimony that undocumented people tended to stay on the south side of the street. What there was testimony of was that the agent had seen homeless people on the south side of the street. So there was also the fog and the time of the day, and it was unusual for people to be walking on that side of the street. And we are supposed to look at... I mean, all they needed was reasonable suspicion, right? They didn't need to rule out all possible innocent explanations, did they? No, Your Honor, that's correct. The agents don't have to weed out all innocent explanations. But what they do have to do is if they are relying on what would otherwise be an innocent explanation, they have to make a particularized connection to this individual. So if we look at, for example, the south side of the street, it's unusual to see people there. But there was no evidence as to why walking on the south side of the street would be a sign of criminal activity. There was no evidence of it being against the law, no evidence of, as I indicated before, of undocumented people tending to stay on the south side of the street. Based on their experience, they had seen homeless people on that side. So weighing their experience, it's more indicative of a homeless person than an undocumented person. I guess the problem I have is that it's, I mean, it is somewhat just looking at that factor in isolation. But I think why couldn't they count that in among the totality of the circumstances they were considering? It was the fog, the time of day, the mud on his clothes, the proximity to the border and the river, and the fact that it was unusual to see someone walking on that side of the street. I mean, I don't really buy the officer's testimony that only illegal people use that side of the street. But we had a second officer saying that it was unusual, the one who actually made the stop. So I agree, Your Honor. We do look at each factor and see how much weight we give to those before we consider the cumulative. And I'll address maybe what would, in theory, tend to show more probative value, which would be the mud. But if we look at the mud, Agent Carrera testified that, in his experience, people who cross the border through that area would have mud because they have to cross what he called the pretty nasty sewage water of the Tijuana River. But when we look at his actual testimony, he failed to make the connecting dots between his experience and Mr. Behar himself. There was no testimony as to why the mud on Mr. Behar was consistent with someone who had crossed sewage water. For example, one would expect a smell, and there was no testimony of a smell coming from… I think the reasonable suspicion requires that level of granular detail. Yeah, I think when we are looking at the factors, the case law requires any inferences drawn from the experience of the agents to be particularized. And so the problem with not doing that… Would they have to test the mud and see if it came from the same… I mean, they're doing this on the fly. They see somebody who fits the bill, and the question is, do they have anything that… Did they have a reason, or was there another reason why they stopped? I understand, Your Honor. The reason why we need such particularized information in a case where there are hundreds, if not thousands, of lawful residents is that we do need particularized… But there's not hundreds or thousands that are walking on that side of the road that have mud on them and that are walking at 7.30 a.m. in foggy weather. I understand, Your Honor. There's also evidence. This is at E.R. 38, because the fog is another one. I mean, based on the agent's experience, people tended to attempt unlawful crossings during very foggy weather, and that's at E.R. 38. So I think the fog is another factor. And, in fact, if I understand it correctly, at least according to the testimony, the agent specifically went there because fog… It was a foggy day, and their experience was they try and cross during foggy weather. I mean, are you disputing that? No, Your Honor. But what I will say about that is, based on the agent's testimony, their experience is that people, undocumented people, want to avoid detection. But if we look at Mr. Behar's…Mr. Behar himself and his behavior… He wasn't. He wasn't. So it was actually contrary to the agent's experience. I mean, it seems like, I mean, if the probable cause was a standard, I think you'd easily win. But, you know, this is reasonable suspicion. That's a pretty low bar. And here, maybe, again, each piece of evidence isn't enough, but there's four or five of them here. Well, Your Honor, I do believe that the combination of factors don't distinguish an undocumented person from a homeless person that may be walking on the south side. But even if Your Honors disagree with me on the reasonable suspicion, I do believe that the government failed to provide substantial independent evidence corroborating alienate in this case. There was no evidence… Just to be clear before we get there, the standard of review on that one is clear error, correct? You're moving to the corpus collecti? Yes. I think there is an intra-circuit split as to whether it's clear error or de novo, but I believe under either standard, we win. So there was no evidence regarding alienage in this case. No birth certificate, no deportation documents, and other 1325 cases dealing with corpus collecti in this case have considered mode of entry. But unlike those cases, there wasn't substantial evidence here because all we had is the mud. And the fog. And the fog, all of that. But all of that, even all of that combined is very different from Garcia, I confuse the names, Garcia Villegas and Garcia Galindo, where there was actual eyewitness testimony close to the border fence and seeing the person crossing. What about his prior deportation? Excuse me? Isn't there evidence of his prior deportation or no? There isn't. There wasn't any evidence of a prior deportation at trial. So based on all those, I'll reserve the remaining time for rebuttal. Thank you. Good morning. May it please the court. Peter Horn for the United States. Bayhauer's appeal lacks merit on both issues. This court should affirm his conviction. On the first, agents had reasonable suspicion to stop and conduct an immigration inspection here. As based on several particular facts, as your honors pointed out, it's not only the side of the street he was on, it was the time of day. This is 7.30 on a foggy morning in an area where agents knew illegal border crossings are common. He was walking alongside of this. Wasn't his testimony that he actually crossed the night before? Am I misremembering that? That was Bayhauer's. So foggy the night before? I don't believe there was evidence in the record of the weather conditions the night before, but Bayhauer's initial statement to agents, both in the field and post-arrest, was that he had crossed the night before. And so presumably he had crossed the border. I guess to a certain degree that doesn't really matter because the question isn't whether he actually fit within the suspicious circumstances, but whether the suspicious circumstances existed. There was fog that morning. There was fog that morning. The evidence is clear on that. And whether there was suspicious circumstances at the time of the apprehension. And here, right, that's the time of day. Few, if any, businesses were open. There are people who live in that area. There's the mall. But it's not only the side of the street, as your honors pointed out in questions a few moments ago. He's on the side of the street that's closest to the border. In the 300 meters between him and the fence, it's a river valley. It's going to be mud, sewage. Agents knew that if someone's coming across there, they're going to be dirty. And that's consistent with exactly what both of them saw on Bayhauer at that time, which was mud on his boots and pants. This is also an area that agents knew illegal crossings were common. They were sent there at that time of day in those conditions to conduct patrols and possible interdictions under the totality of the circumstances. There is reasonable suspicion. If he didn't have muddy boots, would there be reasonable suspicion in that case and all the other factors were there? It could be a closer call, but there could still be reasonable suspicion based on the time of day, the circumstances of his walking, even his behavior and the way agents ruled out. They didn't need to. But the way they appeared to rule out potential innocent explanations were that they looked at whether he was trying to flag down a car, whether he was walking, whether it's just, you know, that seems like if you're just on a foggy day, if you're walking around, you could be stopped in that area. That seems reasonable. Suspicion seems to have almost no meaning then. I mean, people just walk around taking a walk for everybody. I see driving around. I don't know what people, why people are walking 530 a.m. in the morning, but they do. That seems without muddy shoes, it seems like reasonable suspicion would be almost meaningless. You could stop anybody on a foggy day. It is a significant fact, and we're not taking the position that on a foggy morning at 7, 8 o'clock, Border Patrol has the authority to conduct a stop of just anyone walking on the street. All we're asking is for affirmance. The district court did not err. The magistrate judge did not err in finding reasonable suspicion in these particular circumstances, and that includes the mud, and the evidence, the testimony is unequivocal on that. In Defense Exhibit 4, a screenshot of the recorded post-Miranda testimony, it's not apparent from that shot whether there's mud on him, but that also doesn't show his lower legs, his boots, and both agents testified to the same thing when they saw Behar on the street that morning. Could I ask, so the standard of view when we're reviewing the Fourth Amendment stop initially, we do review that de novo, right? De novo, that's correct. But we give deference to the inferences that the district court drew? To the inferences, the reasonable inferences that the district court, magistrate judge, resident judges, as this court has said before, draw, and inferences drawn by the officers on the scene. So it's a particular, peculiar sort, more deferential sort of de novo review. On de novo review, moving to the second issue, unless the court has more questions on reasonable suspicion, clear error is the standard this court has recognized for the corpus delicti doctrine. Because it's a mixed question of law and fact? That's predominantly factual, exactly. We do seem to have an intra-circuit split on this, and I'm wondering if some of that depends on, because mixed questions of law and fact come in a whole variety of shapes and sizes, and some are more questions of law, which would tend to lean more towards a de novo review, and some are more factual, which would lean more towards clear error. Can you sort of make sense of where we're at, or we just have a circuit split, an intra-circuit split? I don't believe there's an intra-circuit split, in fact. The cases where the clear error standard has been applied are cases in which, like this one, the issue presented on appeal is of the corpus delicti doctrine, a specific challenge to that. Clear error properly applied. There are several other cases where de novo sufficiency of the evidence standard applies too, and in those situations, the corpus delicti doctrine may arise as an issue within the sufficiency challenge, but they're primarily challenges to the sufficiency of the evidence, appealing denial of Rule 29 motions, and in that context, the de novo sufficiency standard is the correct one. Now here, it doesn't make a difference. It's not dispositive, let alone making a difference, because on these facts, with this level of corroboration, this court can affirm, and so not only is it in the government's views. How does that analysis differ from the reasonable suspicion analysis, or does it? Applying the standard of review to? No, well, no, just the analysis under the corpus delicti, I mean, because it seems like a lot of the factors just roll over from the reasonable suspicion analysis. I mean, do we need to do something? Clearly, we have to have something different in that bucket, or else it's just a repeat. There can be. In fact, there is. Now, all the facts that go to reasonable suspicion also corroborate Behar's statements, statements in the field and post-Miranda statements. Now, that fact, two admissions, that's another indication that his confessions are reliable, and the court has said that on multiple occasions. Gonzalez-Gudinez is a good example. Yebley-Torres. Where there's Hernandez, where there's multiple, and here, two close-in-time, substantively identical admissions, that fact alone shows the reliability. And when the second admission is post-Miranda, videotaped, the defendant is afforded all the normal procedural protections, that can make the confession inherently reliable. So that's another important factor. The third aspect is the record checks and Behar's own stipulation at trial, that there was no public record of any kind of applications or some grant of permission for him to enter the U.S. or have lawful status in the U.S. Now, that's significant because, well, one, it, again, indicates he didn't have legal status, and it shows the alienage. It also shows, even more so, the mode of entry, because the reasonable inference is that when he didn't have legal status, had no permission, had no authorization, the way he came in was by, just as he said, illegally coming over the border fence and then entering the country that way to where he was stopped. There are multiple facts here, ample corroboration. This Court has said on multiple occasions that it's just some evidence, just some independent evidence that's required, and that's only to avoid the potential risk of false confessions. Government just needs to show some independent evidence bolstering the confession. Here, that's present based on the circumstances of the apprehension, based on his multiple confessions, and the stipulation along with other facts. I'll submit unless the Court has other questions. Thank you. I'd like to first address opposing counsel's reference that the only reason for the corpus delicti rule is to avoid use of coarse confessions. Lopez Alvarez and Judge Graber's concurrence in Garcia Villegas actually says that there's an additional motive rationale for corpus delicti, and that's to avoid prosecutions where there's a lack of investigation. And that's somewhat what we have here because there really wasn't much, as is stated in—and then getting into the— Oh, I know you—there were two confessions here. There were two confessions. Can you address—does that help the government here, where there were two confessions that seemed to be consistent, or maybe you don't view them as consistent? There are inconsistencies, and it may add an indicia of reliability as to the statements, but this Court has consistently held that extrinsic independent evidence is needed, even if there's multiple admissions. And so then I'd like to address your Honor's question regarding the standard versus corpus delicti and reasonable suspicion, because that's an issue I had, but I did not find any case law that specifically addresses that. But if we do look at the case law, specifically Nedleya Torres, it says that the government needs substantial independent evidence. And although we do not need to reach beyond a reasonable doubt, there does need to be substantial evidence. And if we look how this Court has actually applied that standard in cases, there's much more facts relating to substantial independent evidence than there is here. Okay. Thank you. Thank you to both counsel for your evidence. Thank you. And the case is now submitted.
judges: NELSON, LEE, SUNG